UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EDYTHE FLOWERS,** | ) NO. CV 04-10592-MAN |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ORDER |
| **JO ANNE B. BARNHART, Commissioner of the Social Security Administration,** | ) |
| Defendant. | ) |

Plaintiff filed a Complaint on January 4, 2005, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for supplemental security income benefits ("SSI"). On February 7, 2005, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation on October 4, 2005, in which: Plaintiff seeks an order reversing the Commissioner's decision and directing the payment of benefits or, alternatively, remanding the case for further proceedings; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed her application for SSI on June 24, 2003.[1] (Administrative Record ("A.R.") 55-59.) In her application, Plaintiff claimed to have been disabled since May 16, 1987, due to diabetes and affective mood disorder.[2] (A.R. 20, 55.) She has no past relevant work experience. (A.R. 22.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On March 30, 2004, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Jan Donsbach ("ALJ"). (A.R. 229-38.) On May 17, 2004, the ALJ denied Plaintiff's claim for benefits, and the Appeals Council subsequently affirmed the ALJ's decision. (A.R. 6-8, 19-24.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his May 17, 2004 decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. (A.R. 23.) The ALJ found that Plaintiff had "severe" impairments, consisting of obesity, affective mood disorder, diabetes, and chronic musculoligamentous strain/sprain of the lumbar spine, but concluded that Plaintiff did not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed

---

[1] Plaintiff previously filed an application for SSI on September 3, 2002, and the ALJ declined to reopen this prior claim. (A.R. 19.)

[2] However, in her Disability Report, Plaintiff stated that her disability began on April 17, 1998. (A.R. 91.)

in, Appendix 1, Subpart P, Regulation No. 4.  (*Id.*)

The ALJ further found Plaintiff's subjective complaints to be not credible.  (A.R. 23.)  The ALJ assessed Plaintiff's residual functional capacity assessment as follows:

> [S]he can lift no more than 30 pounds occasionally and 20 pounds frequently; [she] can stand and walk no more than six hours per day; [she can] no more than occasional[ly] climb, balance, stoop, kneel, crouch, or crawl; [she] must avoid concentrated exposure to extremes of temperature; and [she] must perform simple work.

(*Id.*)  The ALJ additionally found that Plaintiff has no past relevant work pursuant to 20 C.F.R. § 416.965, was a "younger individual" pursuant to 20 C.F.R. § 416.963 at the time of the decision, and has "more than a high school (or high school equivalent education)" pursuant to 20 C.F.R. § 416.964. (*Id.*)  Based upon the testimony of the vocational expert and using Medical Vocational Rule 202.20 as a framework, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform.[3]  (*Id.*)  Accordingly, the ALJ concluded that Plaintiff was not "disabled." (*Id.*)

---

[3] Under Rule 202.20, a claimant who is a "younger individual," a "high school graduate or more," and "unskilled," is "not disabled." 20 C.F.R. Pt. 220, App. 2.

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges two disputed issues.  <u>First</u>, Plaintiff contends that the ALJ improperly rejected the opinions of her treating mental health professionals.  <u>Second</u>, Plaintiff contends that the ALJ failed to provide a complete hypothetical question to the vocational expert. (Joint Stip. at 3.)

**A.   The ALJ's Mental Residual Functional Capacity Is Not Based On Substantial Evidence.**

Ordinarily, the opinions of a treating physician should be given great weight, if not controlling weight.  *See* Social Security Ruling 96-2p; *see also* <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)(opinions of treating physicians are entitled to great deference). When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995); *see also* <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating doctors' opinions and relying upon Social Security examiners' opinions in finding that claimant's chronic fatigue syndrome had not rendered her disabled).  Broad and vague reasons will not suffice for rejecting the treating physician's opinion.  <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989).  When a treating doctor's opinion is uncontradicted, it may be rejected by an ALJ only "for 'clear and convincing' reasons supported by substantial evidence in the record."  <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202-03 (9th Cir.

2001)(citation omitted); Reddick, 157 F.3d at 725.

Plaintiff contends that the ALJ erred in failing to provide specific and legitimate reasons to reject the opinions of her treating mental health professionals. Specifically, Plaintiff contends that the ALJ improperly disregarded treatment records showing that she had mental limitations, including impaired memory, judgment, and insight, without providing any reason for doing so. (Joint Stip. at 4-5.)

In discussing Plaintiff's mental health treatment records, the ALJ stated:

> On August 7, 2002, [Plaintiff's] treating psychiatrist, Ernesto [Natividad], M.D., at the Los Angeles County Department of Mental Health stated that [Plaintiff's] concentration is somewhat impaired; that she gets along well with others; that stress at work makes her nervous and sometimes triggers panic attacks; that she appears to be stable on medication; and that [Plaintiff's] condition is unlikely to improve (Exhibit 9-F). Dr. [Natividad] also noted that [Plaintiff] has seen her therapist only twice in the past two years and has not participated in therapy, but sees him primarily for medication management.
>
> By May 15, 2003, [Plaintiff's] progress notes reflect great improvement, including [Plaintiff's] statement that she has had "no panic attacks for a while" and "great improvement with medication" (Exhibit 5-F: 3). Her more [recent] medication

6

  logs also reflect that [Plaintiff's] response to medication is "good", that her "anxiety remains down", and that she "has not had [an anxiety attack] for the last few months" (Exhibit 9-F: 4, 5, 6).

(A.R. 21.)

In fact, in his August 7, 2002 Mental Disorder Questionnaire Form, Dr. Natividad diagnosed Plaintiff with "bi-polar disorder, manic" and "panic attacks with agoraphobia," and noted that Plaintiff's condition "is probably as stable as it is going to get" and "no further improvement can be expected."  (A.R. 124.)  In addition, he noted that Plaintiff:  "appears to be stable on medication"; has "concentration [which] does not appear to be severely impaired, [but] perhaps somewhat" based on a memory exam; has "[impaired] practical judgment"; "[i]s able to follow written [and] oral instructions after going over them a few times"; has "[poor] attention [and] focus [due to] possible brain damage from past alcohol abuse"; and has panic attacks triggered by "[d]eadlines [and] stress at work."  (A.R. 121-23.)

The record shows that Plaintiff had a long history of significant mental health problems.[4]  For instance, in an October 6, 2000 Adult Initial Assessment from Los Angeles County Department of Mental Health, Alna Baray, M.H.C./R.N. diagnosed Plaintiff with bipolar disorder, manic; noted symptoms such as "moderate[ly] impaired" insight,

---

[4] Plaintiff testified at the March 30, 2004 hearing that she stopped drinking in April 2000, and although she has experienced fewer panic attacks since that time, she did continue to experience panic attacks and manic bouts of depression and hyperactivity.  (A.R. 233-35.)

"fragmented" concentration, "[l]abile" and "[w]orried" affect, "[i]rritable" and "[d]ysphoric" mood, "paranoid" delusions, "suspicious" ideations, "[e]xcessive worry," and "[t]hreatening" homicidal/suicidal ideation, according to her history; and assessed her with a Global Assessment of Functioning ("GAF") of 30.[5]  (A.R. 154-57.)

In determining Plaintiff's mental residual functional capacity, the ALJ relied upon the findings of Dr. Mark Salib, a state agency physician. The ALJ described Dr. Salib's evaluation of Plaintiff as follows:

> On August 30, 2002, [Plaintiff] was evaluated by a DDS medical evaluator, who opined that [Plaintiff] has mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of extended-duration decompensation (Exhibit 4-F: 11). The DDS doctor concluded that [Plaintiff] retained the capacity to perform simple work (Exhibit 4-F: 17). A September 30, 2003 evaluation by a DDS medical evaluator resulted in the same recommendation (Exhibit 8-F). I accept and adopt this mental residual functional capacity assessment.

(A.R. 21.)  In his findings, the ALJ stated that Plaintiff had the

---

[5] A GAF of 21-30 shows behavior that is considerably influenced by delusions or hallucinations, serious impairment in communications or judgment, or a general inability to function in almost all areas. American Psychiatric Assoc. Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) ("DSM-IV").

mental residual functional capacity to perform "simple work." (A.R. 23.)

In his September 30, 2003 Mental Residual Functional Capacity Assessment, Dr. Salib found that Plaintiff was "not significantly limited" in all areas of mental functioning, but concluded she was "moderately limited" in her: ability to understand and remember instructions; ability to carry out detailed instructions; and ability to interact appropriately with the general public. (A.R. 192-93.) Dr. Salib further noted that: "[Plaintiff] is capable of understanding, remembering, and completing simple tasks"; "[Plaintiff] is capable of focused attention and sustained concentration for 8 hours a day on a regular basis"; and "[Plaintiff] is capable of appropriate interaction and relationships with others." (A.R. 194.) In a September 30, 2003 case summary, Dr. Salib noted that he reviewed May 15, 2003 progress notes from Long Beach Mental Health, indicating that Plaintiff was "doing better" with "no panic attacks for a while" but had "limited insight and judgment," as well as Dr. Natividad's August 7, 2002 report. (A.R. 196-97.)

Plaintiff's contention is well-taken that Dr. Salib, upon whom the ALJ relied in determining Plaintiff's residual functional capacity, did not have the entirety of Plaintiff's treating records available to him. *See* 20 C.F.R. §§ 404.1517, 416.917 ("[i]f we arrange for [a consultative] examination or test, . . . [w]e will also give the examiner any necessary background information about your condition."). In the September 30, 2003 Case Summary that Dr. Salib completed, he specified that he reviewed progress notes dated August 7, 2002 and May

9

15, 2003; these records are only a small portion of Plaintiff's treating records. (A.R. 196-97.)

Further, the record contains treating mental health professionals' notes that post-date Dr. Salib's September 30, 2003 assessment and pre-date the ALJ's May 17, 2004 decision. (*See* A.R. 200-02, 226-27.) While some of these records show that Plaintiff's compliance with medication was good and reflect improvement in her condition, they nonetheless show that Plaintiff continued to have panic attacks and other symptoms, such as memory problems, which could affect Plaintiff's ability to function in the work-place. (*See, e.g.*, A.R. 202 -- November 19, 2003 medication log noting that Plaintiff's anxiety had decreased but her panic attacks persisted and her response to medication was "minimal"; A.R. 226 -- April 26, 2004 progress notes showing Plaintiff's anxiety had decreased but her memory is still giving out); *see also* 20 C.F.R. Pt. 200, App. 2, Section 12.00(B) ("The existence of a medically determinable [mental] impairment of the required duration must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory or psychological test findings. These findings may be intermittent or persistent depending on the nature of the disorder.")

The ALJ's characterization of such additional records -- as reflecting *only* "great improvement" -- is not accurate, and his dismissal of the limitations noted therein (*i.e.*, the continuation of panic attacks and other symptoms) is improper. Lester, 81 F.3d at 830; *see also* Reddick, 157 F.3d at 725. While it is not clear how, if at all, these additional records would have affected Dr. Salib's determination had he reviewed them, they directly bear upon Plaintiff's

mental residual functional capacity and, therefore, this Court cannot confirm that the ALJ's determination regarding Plaintiff's mental residual functional capacity -- based as it is on Dr. Salib's conclusions founded upon his review of an incomplete record -- is supported by substantial evidence.[6]

The ALJ had discretion to decline to reopen the prior determination regarding Plaintiff's disability.[7] However, the ALJ could not properly minimize the significance of medical records preceding the date of Plaintiff's present claim and base his residual functional capacity finding on a medical opinion resting on a review of incomplete records.

---

[6] Furthermore, as set forth in Section B, *infra*, the ALJ's failed to properly incorporate the limitations set forth by Dr. Salib in his residual functional capacity assessment.

[7] Plaintiff's contention that the ALJ applied the wrong standard in declining to reopen Plaintiff's prior claim is rejected, as the Court lacks jurisdiction to review the ALJ's decision not to reopen Plaintiff's prior claim. Krumpelman v. Heckler, 767 F.2d 586 (9th Cir. 1985)("'[T]he Secretary's decision not to re-open a previously adjudicated claim for social security benefits' is purely discretionary and is therefore not considered a "final" decision within the meaning of § 405(g). . . . District courts, therefore, have no jurisdiction to review a refusal to re-open such a claim or a determination that such a claim is res judicata.")(citation omitted; emphasis added); *see also* Califano v. Sanders , 430 U.S. 99, 107-08, 97 S. Ct. 980, 985 (1977)(Social security Act does not authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits).

Additionally, the ALJ did not specify the beginning date of the claimed period of disability. However, regardless of Plaintiff's onset of disability, Plaintiff cannot receive disability payments until a month after June 24, 2003, her application date. 20 C.F.R. § 416.335 ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application. If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month."). Nevertheless, the ALJ should specify a finding regarding Plaintiff's onset date in his decision on remand.

Medical evidence from outside the period of disability may be particularly relevant where the alleged impairment is unimproved and progressive in nature. *See* Magallanes, 881 F.2d at 752 (reports from 1983 and 1984 used to assess onset of claimant's disabling back impairment in 1985); *see also* Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989)(pre-onset diagnoses of mental disease considered because claimant's condition was progressive in nature). Here, the prior records indicate significant mental impairment -- including a GAF of 30 and symptoms such as "moderate[ly] impaired" insight, "fragmented" concentration, "paranoid" delusions, "suspicious" ideations, and "[e]xcessive worry" (A.R. 120-24) -- which are at odds with Dr. Salib's finding that Plaintiff would be capable of "completing simple tasks."[8]

Although the ultimate conclusion regarding Plaintiff's disability may not change, the ALJ must ensure that his conclusion as to Plaintiff's residual functional capacity is based on substantial evidence. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (residual functional capacity is an assessment based upon all of the relevant evidence); *see also* 20 C.F.R. §§ 404.1512a(b), 416.919a(b) (listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity or insufficiency in the evidence). For the reasons set forth above, the ALJ's finding as to Plaintiff's residual functional capacity is not clearly based on substantial evidence constitutes reversible error.

---

[8] Although Baray is not an "acceptable medical source" pursuant to 20 C.F.R. § 416.913(a), her notes and observations are consistent with Plaintiff's other treating records and are not, therefore, "irrelevant," as Defendant suggests. As such, they highlight the need for the ALJ to reconsider and correct the errors in his mental residual functional capacity finding.

12

**B.    The ALJ Should Elicit Additional Testimony From A Vocational Expert On Remand.**

An ALJ must seek the testimony of a vocational expert if the claimant has non-exertional limitations. *See* Reddick, 157 F.3d at 729 (because the claimant had non-exertional limitations, it was error not to seek the testimony of a vocational expert). If the vocational expert's testimony is not based on a claimant's complete set of limitations, then it has no evidentiary value. *See* Embrey v. Bowen, 849 F.2d 418, 422-24 (9th Cir. 1987)(in posing a hypothetical to a vocational expert, the ALJ must fully and accurately reflect all of the claimant's limitations).

Plaintiff's argument is well-taken that the ALJ's mental residual functional capacity finding that Plaintiff is limited to "simple work" (A.R. 23) and the sole restriction of "unskilled" work in his hypothetical question to the vocational expert (A.R. 237) are improper, in that they purport to be based upon Dr. Salib's September 30, 2003 Mental Residual Functional Capacity Assessment but, in fact, are inconsistent with it. *Cf.* Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996)(ALJ properly considered treating doctors' opinions which were consistent with and subsumed within the ALJ's determination that the claimant was capable of performing a "wide range of light work"). As noted above, that assessment notes "moderate" impairments in Plaintiff's ability to understand and remember instructions, ability to carry out detailed instructions, and ability to interact appropriately with the

general public.[9]  (A.R. 192-93.)  Defendant's argument that the ALJ was only required to include in his hypothetical question the limitations that Dr. Salib noted on the last page of his assessment is incorrect and at odds with the instructions of the form.  Specifically, this form directs the physician completing it to "[r]ecord in this section the *elaborations on the preceding capacities*."  (A.R. 194; emphasis added.)

Similarly, Plaintiff contends that the ALJ's hypothetical to the vocational expert was flawed, because the ALJ did not accurately encompass the limitations noted in the October 2003 Physical Residual Functional Capacity Assessment completed by Dr. F. Wilson, a state agency physician.  Dr. Wilson found that Plaintiff could lift and carry 30 pounds occasionally and 20 pounds frequently; could sit, stand, and/or walk six hours in an eight-hour workday; could climb, balance, stoop, kneel, crouch, and crawl occasionally; and should avoid concentrated exposure to extreme heat and cold.  (A.R. 171-74.) Although the ALJ stated in his opinion that he was adopting Dr. Wilson's findings regarding Plaintiff's physical limitations, the ALJ only asked the vocational expert a hypothetical question as to what jobs within the national economy Plaintiff could perform if Plaintiff were limited to "light" work.[10]  (A.R. 237.)

---

[9]  Defendant is incorrect in asserting that Dr. Salib noted in a Psychiatric Review Technique Form that Plaintiff's mental impairment was not "severe" at Step Two.  ( *See* A.R. 178-91.)  In any event, the ALJ stated that he was relying upon Dr. Salib's September 30, 2003 Mental Residual Functional Capacity Assessment, not his Psychiatric Review Technique Form.  (A.R. 21.)

[10]  Defendant contends that the hypothetical question was proper, because "light" work does not require more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling pursuant to Social Security Ruling 83-14, and that concentrated exposure to extreme

14

On remand, to the extent that the ALJ wishes to rely upon residual functional capacity assessments completed by state agency physicians, the ALJ must, at a minimum, ensure that his ultimate residual functional capacity finding is consistent with the findings of those physicians. However, the Court will not further address the issues raised by Plaintiff regarding the propriety of the vocational expert's testimony at this juncture, as the finding regarding Plaintiff's residual functional capacity must be reassessed, as discussed above, and additional testimony from a vocational expert will be required.

**C.   Remand Is Required.**

Where, as in this case, the record needs to be developed and there are errors in the ALJ's findings, remand is appropriate to allow the ALJ

---

could and heat is not required for most jobs pursuant to Social Security Ruling 85-15. (Joint Stip. at 14.)  Although Rule 83-14 states that: "to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job)," it does not state that such non-exertional restrictions need not be provided to a vocational expert in order to determine what jobs a claimant with those limitations can perform.

Similarly, although Rule 85-15 states that "[w]here a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc.," it does not state that the environmental non-exertional restriction of being precluded from exposure to extreme heat or cold need not be provided to a vocational expert in order to determine what jobs a claimant with those limitations can perform.

Thus, if, on remand, the ALJ finds that Plaintiff has these non-exertional limitations, he must specifically provide them in his hypothetical question to the vocational expert.  *See* Desrosiers, 846 F.2d at 577 ("A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines.  In such a case, the guidelines would be inapplicable.").

15

the opportunity to remedy those inadequacies and errors. *See* McAllister, 888 F.2d at 603 (remand appropriate to remedy defects in the record); *see also* Diaz v. Secretary of Health, Ed. and Welfare, 613 F.2d 1194, 1200 (9th Cir. 1980).

### CONCLUSION

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 27, 2006

                                         /s/
                               MARGARET A. NAGLE
                       UNITED STATES MAGISTRATE JUDGE